## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SANDEEP NAYAK, | : | CIVIL NO: 1:14-CV-01053 |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | |
| VOITH TURBO INC., | : | |
| | : | (Magistrate Judge Schwab) |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

In this case, the plaintiff, Sandeep Nayak ("Nayak"), has brought claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") in addition to claims arising under state law.  Pending before the Court is a Rule 12(b)(6) motion to dismiss filed by the defendant, Voith Turbo Inc. ("Voith").  In addition, Nayak has filed a cross-motion to amend his complaint in an attempt to cure the alleged deficiencies indicated by Voith.  For the following reasons, we recommend that Voith's motion be granted in part and denied in part, and Nayak's cross-motion be denied.  Despite denying Nayak's proposed amended complaint, we nevertheless also recommend that he be given leave to amend consistent with the contents of this filing.

I.    **Background and Relevant Procedural History.**

Nayak initiated this lawsuit on June 2, 2014, when he filed his complaint along with a motion to proceed *in forma pauperis*. *Docs.* 1 & 2. On June 3, 2014, we granted Nayak's *in forma pauperis* motion and ordered the United States Marshal's Service to serve Voith. *Doc.* 4. Subsequently, on June 23 and 24, 2014, Voith's counsel entered appearances. *Docs.* 8 & 9. Thereafter, on July 7, 2014, Voith filed the motion to dismiss pending review, *Doc.* 14, which is ripe for disposition on the merits.[1] Also ripe for disposition on the merits is Nayak's cross-motion to amend his complaint. *Doc.* 28.

**A. Nayak's Complaint (*Doc. 1*).**[2]

In his complaint, Nayak, a citizen and resident of India, names Voith as the sole defendant. Voith is a corporation based out of York, Pennsylvania.

During the month of February 2012, Nayak was informed that Voith was interested in hiring him as a sales manager. Thereafter, in May 2012, Nayak was further informed that he would be hired by Voith for at least three years, beginning

---

[1]    In his brief in opposition, Nayak requests that Voith's motion be denied for its failure to comply with the pagination and word limitation contained in Local Rule 7.8. *Doc.* 33 at 4. Voith, however, appears to have complied in that the brief, which exceeds 15 pages in substance, contains fewer than 5,000 words. *Doc.* 23 at 30.

[2]    In accordance with the motion to dismiss standard of review, we will accept Nayak's allegations in his complaint as true. *See, infra*, Part II.

in October 2012, and to extend no later than September 2018.  Consequently, in October 2012, Nayak moved to the United States from India.  Prior to his arrival in the States, Voith had vouched for Nayak to federal agencies.

After working at Voith for only one month, however, Nayak was subjected to abuse and harassment by his co-workers because of his nationality and skin color.  Specifically, Nayak claims that on one occasion a fellow co-worker threatened to kill him.  According to Nayak, the abuse and harassment occurred through February 18, 2013.

Nayak did not report such incidents until January 13, 2013, when he filed his first internal complaint.  The human resources department at Voith responded to Nayak's first internal complaint by telling Nayak that he did not know how to behave in an American society and would need training in that regard.  Nayak was also threatened with termination of employment and placed on a 90 day probation period.  In addition, co-workers began retaliating against Nayak, and his supervisor physically assaulted him.

On February 20, 2013, the day after he was physically assaulted, Nayak, through his former attorney, Anne Zerbe ("Zerbe"), filed a second internal complaint.  At that time, Nayak was on medical leave.  According to Nayak, he was on medical leave because his health had worsened from the abuse and harassment to which he was subjected.  Nayak was scheduled to resume working

3

once his health improved.  In response to Nayak's second internal complaint, Voith assured him that no one would retaliate against him and that the company would help him when he returned to work.

In March 2013, however, Nayak asserts that Voith influenced Zerbe to conspire against him so that his employment would be terminated.  As part of said conspiracy, Voith began deferring Nayak's return date.   Furthermore, Nayak claims that Voith retaliated against him by threatening to terminate his employment and have him deported.  In pertinent part, Nayak also claims that he was told that he did not deserve to continue working at Voith because he was not an American Citizen, and that his employment would be terminated.

Subsequently, around March 19, 2014, Voith proposed a confidential agreement and general release (the "release").[3]  Pursuant to the release's terms, Nayak was to go on paid leave until December 31, 2013, when his employment relationship with Voith would expire.  *Doc.* 1 at 34.  In addition, Zerbe was to be paid $10,000 from Voith, to cover Nayak's attorney's fees.  *Id.*  Furthermore, the release required Nayak to release, or waive, his right to sue Voith and its employees for "any waivable claim, cause of action, loss, expense, or damage, of any and every nature whatsoever…."  *Id.* at 35, 36.  In particular, under its terms, Nayak was required to release any releasable claim arising under Title VII of the

---

[3]     Attached to the complaint, Nayak provides a copy of this version of the release along with the version to which he later provided his signature.

Civil Rights Act of 1964, the Americans with Disabilities Act, the Family and Medical Leave Act, the Pennsylvania Human Relations Act, the Pennsylvania Minimum Wage Act, the Pennsylvania Wage Payment and Collection Law, or any other federal, state, or local law, or any waivable claim under any common law theory. *Id.* And, the agreement contained a covenant not to sue. *Id.* at 36.  Nayak refused to sign the release and informed Zerbe that he wanted to resume working at Voith until, at least, September 2015.

After refusing to sign the release, Voith changed attorneys.  Nayak claims that this was done only because Zerbe was friends with Voith's new attorney, and, therefore, the two attorneys could work together to conspire against him.  Nayak also asserts that Voith withheld his W-2 form to "blackmail" him into signing the release, and that Voith "bribed" Zerbe by agreeing to pay Nayak's attorney's fees.

Weeks after refusing to sign the release, on April 10, 2014, Zerbe sent a final demand to Voith, iterating that Nayak wanted to resume work and continue his employment there.  Voith did not respond to Zerbe's final demand.

Then, on May 12, 2013, Zerbe met with Nayak.  At that meeting, Zerbe told Nayak that the release would actually include an addendum stating that he would remain employed until December 2013, and if he did not secure alternative employment before that date, his employment at Voith would be extended until September 2015.  Thereafter, if Nayak found employment prior to September

2015, Zerbe explained to Nayak that, under the terms of the amended release, he would have no claims against Voith.  Agreeing to those terms, Nayak signed the signature page of the purportedly amended release on May 15, 2013; however, the release did not include the explained addendum.  Additionally, the release that Nayak signed included language that was not set forth in the original version. Among the notable differences, the release that Nayak signed required him to submit a letter of resignation.  *Doc.* 1 at 41.  Upon submitting a letter of resignation, Voith was required to place Nayak on paid leave until December 31, 2013, the termination date.  *Id.* In addition, the signed release provided that Nayak would not be eligible for incentive payments or other employment-related benefits if he secured employment prior to the termination date, and that Voith would not pay the costs of his return to India if he could not find other employment before the termination date.  *Id.* at 42, 43.  In all other respects, the signed release was the same as the one that was originally proposed, and Nayak does not allege that Voith failed to comply with the signed release's terms or that he did not receive consideration upon providing his signature.

Nayak nevertheless asserts that the release, to which he eventually agreed to sign, was induced by fraud and "foul play."  Yet, Nayak's employment was terminated pursuant to the signed release, and his employment Visa was revoked. Thereafter, in October 2013, Nayak filed a complaint with the Equal Employment

6

Opportunity Commission ("EEOC").  The EEOC dismissed Nayak's complaint on January 30, 2014, relying upon the terms of the release, as signed, and acknowledging that the issue had been settled.  The EEOC's decision was sent to Voith's counsel and Zerbe.  Nayak did not personally receive a copy of the EEOC's decision until May 5, 2014.  Once Nayak received a copy of the EEOC's decision, he demanded a right to sue letter, but his request was denied.[4]

Based upon these allegations, Nayak raises the following claims against Voith: (1) discrimination and harassment in violation of Title VII; (2) hostile work environment in violation of Title VII; (3) retaliation in violation of Title VII; (4) breach of contract; (5) fraud; (6) wrongful termination; (7) civil conspiracy; and (8) intentional infliction of emotional distress.  By way of remedy, Nayak primarily seeks monetary damages.

## II.   **Legal Standard.**

### A. Motion to Dismiss.

Pursuant to the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the pleading standard announced in Rule 8 does not require "detailed factual allegations."  A pleading that offers "labels and

---

[4]   According to Voith, the EEOC eventually issued a right-to-sue letter to Nayak, on July 31, 2014.  *Doc.* 41 at 7.

conclusions" or a "formulaic recitation of the elements of a cause of action will not do," however.  *Id.*  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.* at 557.  Rather, to comply with Rule 8(a)(2) and withstand Rule 12(b)(6) – the mechanism through which a party may move to dismiss a pleading for failing to state a claim, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Id.* at 570.

A claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.* at 556.  In other words, this standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679 (citation omitted).

"In keeping with these principles a court considering a [complaint in conjunction with Rule 12(b)(6), should] begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.*  Thereafter, "[if] well-pleaded factual allegations [are identified], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.*  While traditionally focused upon a

8

complaint's allegations, in resolving Rule 12(b)(6) motions a court may also consider exhibits attached to a complaint, matters of public record, and "an undisputedly authentic document" relied upon by the plaintiff and attached as an exhibit to a defendant's motion to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Additionally, in a case such as this, a complaint filed by a *pro se* litigant is to be liberally construed and held to a less stringent standard than formal complaints drafted by a lawyer. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim."  *Mala v. Crown Bay Marina, Inc.*, 10-4710, 2013 WL 57895 at *4 (3d Cir. Jan. 7, 2013).

## B. Motion to Amend.

The filing of an Amended Complaint is governed by Rule 15(a) of the Federal Rules of Civil Procedure.  Rule 15 (a) provides:

> **(1)** *Amending as a Matter of Course.* A party may amend its pleading once as a matter of course within:
>
> **(A)** 21 days after serving it, or
>
> **(B)** if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>
> **(2)** *Other Amendments.* In all other cases, a party may amend its pleading only with the opposing party's written consent or the

court's leave. The court should freely give leave when justice so requires.

Fed.R.Civ.P. 15(a).   Consistent with this Rule, leave to amend rests in the discretion of the Court, and a court is justified in denying a motion to amend on grounds of undue delay, bad faith, dilatory motive, prejudice, or futility.  *USX Corp. v. Barnhart*, 395 F.3d 161, 166 (3d Cir. 2004).   As the Third Circuit has explained:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413 (3d Cir. 1993) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

The Third Circuit has likewise provided that "prejudice to the non-moving party is the touchstone for the denial of an amendment." *Id.* at 1414 (quoting *Cornell & Co., Inc. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)).  Thus, with particular respect to "delay," as cause for denying a motion to amend, the Court notes that "[t]he passage of time, without more, does not require a motion to amend a complaint be denied; however, at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *J.E.*

*Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 614 (3d Cir. 1987) (quoting *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir.1984)).  Moreover, "futility" has generally been interpreted as meaning "that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)(cited case omitted).

## III.  Discussion.

### A. Voith's Motion to Dismiss.

#### 1.  The Release as a Bar to Nayak's Claims.

In its motion, Voith first contends that Nayak's Title VII claims in addition to his state-law claim for wrongful termination should be dismissed because he released said claims, and the signed release cannot be invalidated based upon Nayak's factual allegations.  *Doc.* 23 at 13-20.  In opposition, Nayak argues that the release should be given no effect, or invalidated, because he was fraudulently induced into signing it.  *See Doc.* 33 at 9, 15.  In pertinent part, Nayak relates that Voith and Zerbe engaged in a conspiracy to violate his rights by engaging in fraud in order to have him sign the release, and that Voith bribed Zerbe to induce him to sign the agreement by providing her with $10,000, in attorney's fees.

It is well-settled that, when construing the terms of a general release, such as the one at issue here, federal courts in Pennsylvania are guided by Pennsylvania law.  *Three Rivers Motor Co. v. Ford Motors Co.*, 522 F.2d 885, 892 (3d Cir.

1975).   "[In Pennsylvania, a] signed release is binding upon the parties unless executed and procured by fraud, duress, accident or mutual mistake."  *Id.* (citing *Kent v. Fair*, 140 A.2d 445 (1958)).   Thus, the signed release shall control unless Nayak, through his factual allegations, shows that the release should be invalidated.  *See Culver v. United States Department of Labor Occupational Safety & Health Administration*, No. 06-CV-438, 2006 WL 3199138, at *3 (M.D. Pa. Nov. 3, 2006)("[The] allegations must 'show fraud or mistake by clear, precise, and convincing evidence.'")(quoting *Mulholland v. Pittsburg National Bank*, 209 A.2d 857, 865 (Pa. 1965)); *Young v. Robershaw Controls Co.,* 430 F.Supp. 1265, 1268-69 (E.D. Pa. 1977)(stating that the burden of proving the release is invalid is on the party alleging its invalidity)(citation omitted).[5]

Duress has been defined under Pennsylvania law as "that degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness."  *Carrier v. William Penn Broadcasting Co.*, 233 A.2d 519, 521 (Pa.

---

[5]    It is axiomatic that a complaint cannot be amended through a brief or other filing.  *See Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173 (3d Cir. 1988).  Thus, to the extent that Nayak seeks to show that the release should be invalidated through any allegations or assertions set forth in his motion to set aside or invalidate the release (*Doc.* 7), said allegations or assertions should be disregarded. As the Third Circuit articulated, "[i]t is one thing to set forth theories in a brief [or other court filing]; it is quite another to make proper allegations in a complaint."  *Zimmerman*, 836 F.2d at 181.

1967).   Under this definition, at minimum, Nayak must show that he signed the agreement under threats of impending physical or economic harm. *See Williams v. Stone*, 923 F.Supp. 689, 691 (E.D. Pa. 1996)(explaining that the pleader must allege threats of *physical* harm to show duress)(citations omitted); *Hopkins v. NewDay Financial, LLC*, No. 07-3679, 2008 WL 2654635, at *2 (E.D. Pa. June 30, 2008)(discussing the doctrine of *economic* duress).

Here, Nayak has not alleged that he was threatened with impending physical harm at the time he provided his signature to the release; accordingly, the Court must look to the doctrine of economic duress to determine whether Nayak has shown that the release should be invalidated.   As a basic premise to the definition of duress, "[it] is not found when there is simple financial pressure." *Three Rivers,* 522 F.2d at 893.   Yet, under Pennsylvania law, a plaintiff may allege that (s)he was under economic duress by plausibly showing that "(1) there exist[ed] such pressure of circumstances which compel[led] the injured party to involuntarily or against his will execute an agreement which result[ed] in economic loss, and (2) the injured party does not have an immediate legal remedy." *Litten v. Jonathan Logan, Inc.*, 286 A.2d 913, 917 (Pa. Super. Ct. 1971).

In Nayak's situation, though, any claim of economic duress fails because he admits in his complaint that he consulted with Zerbe about the release before providing his signature.   Consequently, economic duress cannot lie.  *See Hopkins*,

13

2008 WL 2654635, at * 2 (citing *Degenhardt v. Dillon Co.*, 669 A.2d 946, 950-51

(Pa. 1996)); *Cuchara v. Gai-Tronics Corp.*, 129 F.App'x 728, 731 (3d Cir. 2005)

("[A]bsent a threat of actual bodily harm, there can be no claim of duress 'where

the contracting party is free to consult with counsel.'")(quoting *Carrier*, 233 A.2d

at 521).[6]

---

[6]    Nayak does not dispute that he consulted with Zerbe before providing his signature; instead, Nayak focuses upon the conclusory assertions set forth in his complaint that Voith bribed Zerbe and otherwise conspired with her to violate his employment rights. Other than pointing to the agreed-upon payment that Zerbe was to receive under the terms of the signed release, however, Nayak does not provide any allegations to support the contention that Zerbe was bribed so as to make his bribery assertions appear plausible. Furthermore, Nayak's allegations relating to his claim that Voith and Zerbe engaged in a civil conspiracy are purely speculative and likewise fail to plausibly show the existence of any conspiracy. *See Williams v. W. Wayne Sch. Dist.*, Civ. No. 12–cv–2074, 2013 WL 4718920, *8 (M.D. Pa. Sept.3, 2013) (setting forth the essential elements of a civil conspiracy claim under Pennsylvania law)(citing *Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. Ct. 2008)). At best, Nayak's allegations, relating to his conspiracy claim, show conscious parallelism between Voith and Zerbe. But, a showing of conscious parallelism is insufficient to show the existence of a conspiracy. *See Savage v. Judge*, 644 F.Supp.2d 550, 561 (E.D. Pa. 2009)(stating that it is not enough that the end result of the parties' independent conduct caused the plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism). Thus, based upon the allegations in Nayak's complaint, the only reasonable inference that can be made is that Nayak received the benefit of Zerbe's legal representation absent any bribes from, or conspiracies with, Voith. Moreover, absent sufficient allegations showing that Voith promoted or encouraged Zerbe to engage in fraudulent conduct, Nayak must bear the consequences of having failed to review the release himself before signing it. *See Rothman v. Fillette*, 469 A.2d 543, 545 (Pa. 1983)("[A] principal acting through an agent in dealing with an innocent third party must bear the consequences of the agent's fraud.")

Turning to whether the release was procured by fraud, Pennsylvania law requires plaintiffs to show: (1) misrepresentation of a material fact; (2) *scienter*; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damage to the party defrauded as a proximate result." *Best v. Romec, Inc.*, No. 3:10-CV-2335, 2011 WL 3206828, at *5 (M.D. Pa. July 28, 2011)(citing *Rizzo v. Michener*, 584 A.2d 973, 980 (Pa. Super. Ct. 1990)).  In this case, Nayak offers no allegation that *Voith* engaged in fraud.  Rather, Nayak's assertion of fraud is aimed squarely at Zerbe's conduct. Moreover, there are no sufficient allegations plausibly showing that Zerbe's alleged fraud could be attributed to misconduct on part of Voith, *see, supra*, Note 6, and it can be reasonably inferred from Nayak's complaint that he received substantial consideration under the terms of the signed release.  Nayak also does not otherwise claim that he returned the consideration to Voith.  As such, at least one court within the Third Circuit has found that plaintiffs such as Nayak, who have received and not returned consideration, cannot seek to invalidate a release based upon fraud, because permitting a plaintiff to do so would operate as an impermissible ratification.  *Roche v. Supervalu, Inc.*, No. 97-2753, 1999 WL 46226, at *5 (E.D. Pa. Jan. 15, 1999)(quoting *Jordan v. Smithkline Beecham, Inc.*, 958 F.Supp. 1012, 1019-20 (E.D. Pa. 1997)); *see Melendez v. Horizon Cellular*

*Telephone Co.,* 841 F.Supp. 687, 691 (E.D. Pa. 1994)(quoting *Kirby v. Dole*, 736 F.2d 661, 664 (11th Cir. 1984)).

Last, Nayak does not show that the release should be invalidated because the settlement agreement was executed and procured by accident.  Similarly, Nayak does not allege that both he and Voith were mistaken as to the existing terms under the agreement, so as to show execution and procurement of the agreement *via* mutual mistake.  *Holt v. Department of Public Welfare*, 678 A.2d 421, 423 (Pa. Cmwlth. Ct. 1996)(discussing when a mutual mistake exists, finding no mutual mistake, and explaining that a unilateral mistake affords no basis for rescinding a release), *petition for allowance of appeal denied*, 689 A.2d 236 (Table)(Pa. 1997); *but see Ambrose v. Krause Publications, Inc.*, 354 F. App'x 711 (3d Cir. 2009)(explaining that, under Pennsylvania law, a mistake of "one or both" parties at the time of contracting may be a valid ground for rescinding a settlement agreement).

Accordingly, Nayak has failed to meet his burden of showing that the release should be invalidated.  Nayak's Title VII claims in addition to his state-law claim

for wrongful termination should be dismissed as barred under the terms of the release.[7]

## 2. Nayak's State-Law Claims.

The only remaining claims – aside from the wrongful-termination claim -- are those that Nayak brings under Pennsylvania state law. The Court has an independent jurisdictional basis over said state-law claims pursuant to 28 U.S.C. § 1332, given that the parties have diverse citizenship and the amount-in-controversy exceeds $75,000. *See Doc.* 1 at 1, 13.[8]

### a. Breach of Contract.

According to Nayak, Voith breached an agreement to provide "minimum employment from October 2012 to September 2015" and to file "for [his] permanent residency." *Doc.* 1 at 10. Nayak asserts that the agreements were made before his arrival in the United States. *See id.*

---

[7]    Having recommended that Nayak's Title VII claims should be dismissed as barred under the terms of the release to which he provided his signature, we dispense with a discussion of Voith's alternative arguments, *Doc.* 23 at 20-22, relating to Nayak's Title VII claims.

[8]    It is well-established that "federal courts sitting in diversity cases are required to apply the substantive law of the state whose laws govern[s]…." *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 378 (3d Cir. 1990). Here, the parties do not dispute that Pennsylvania law governs, and we will apply it in this action when necessary.

To prevail on a claim for breach of contract under Pennsylvania law, a plaintiff must prove the following: (1) the existence of a contract, including its essential terms; (2) defendant's breach of duty imposed by the terms; and (3) actual loss or injury as a direct result of the breach. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003)(quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).  In his complaint, Nayak alleges that Voith promised to file for his permanent residency status in the States.  Nayak, though, fails to provide any additional allegations plausibly showing the existence of a valid contract with Voith so as to give rise to a breach-of-contract claim.  Moreover, the documents that Nayak has attached to his complaint do not operate to push his claim over the line into the realm of plausibility; instead, if anything, those documents reflect that Voith believed that Nayak would apply for permanent residency status on his own. *See Doc.* 1 at 48.

Moreover, to the extent Nayak is claiming that the promise to apply for permanent residency status was made in connection with any express, or implied-in-fact, employment contract, to overcome the presumption of at-will employment, he still fails to state a breach-of-contract claim. *See Preobrazhenskaya v. Mercy Hall Infirmary*, 71 F. App'x 936, 940 (3d Cir. 2003)(discussing Pennsylvania's at-will-employment presumption).  Of particular noteworthiness is that Nayak signed a release which has not otherwise been invalidated and which terminated his

18

employment on December 31, 2013.   As well, the signed release contains no promises to apply for permanent residency status on Nayak's behalf; indeed, Nayak conclusively asserts that such a promise was made prior to providing his signature on the release.   Thus, the release to which Nayak provided his signature operated to modify or supersede any previously existing agreement relating to his employment at Voith or any promises made in connection therein.   Accordingly, Nayak cannot show that Voith breached any agreement or contract, and his breach-of-contract claims should be dismissed.

### b. Fraud.

Under Pennsylvania's common law, the elements of fraud are:

> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

*Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 225 n. 13 (3d Cir. 2008)(quoting *Colaizzi v. Beck*, 895 A.2d 36, 39 (Pa. Super. Ct. 2006)).   In addition to the pleading standards explained *supra*, Fed.R.Civ.P. 9(b) requires that fraud allegations be pled with particularity. *Lum v. Bank of America*, 361 F.3d 217, 223 (3d Cir. 2004); *see also In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 347 (3d Cir. 2010). A plaintiff satisfies this requirement by pleading the "date, place or time of the fraud,

or through alternative means of injecting precision and some measure of substantiation into [her] allegations of fraud." *Lum*, 361 F.3d at 224 (citations omitted).

In this case, as already noted, Nayak's allegations relating to fraud are aimed solely at Zerbe's conduct. Nowhere in his complaint does Nayak sufficiently allege that Voith, or its agents, made material misrepresentations to him or that Zerbe was acting on Voith's behalf when the alleged fraudulent conduct occurred. As such, this claim should be dismissed.

### c. Civil Conspiracy.

Rather than repeating it here, we recommend that Nayak's civil conspiracy claim be dismissed for the reasons discussed in Note 6, *supra*.

### d. Intentional Infliction of Emotional Distress.

Generally, on a claim for intentional infliction of emotional distress, a plaintiff must show that a defendant's conduct was "intentional, outrageous or extreme" and caused severe emotional distress. *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005). "Outrageous or extreme conduct has been defined by the appellate courts of this Commonwealth as conduct that is so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency,

and to be regarded as atrocious, and utterly intolerable in civilized society." *Id.* (internal quotation marks omitted). "With regard to the element of outrageousness, it is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery." *Id.* at 1231. Furthermore, a plaintiff must sufficiently allege a physical injury or harm to sustain a cause of action for intentional infliction of emotional distress. *Crivellaro v. Pennsylvania Power and Light Co.*, 491 A.2d 207 (1985) (finding that symptoms of depression, nightmares, anxiety requiring psychological treatment, and ... ongoing mental, physical and emotional harm sufficiently stated physical manifestations of emotional suffering to sustain a cause of action).

In the context of racial discrimination, as reprehensible as it may be, the mere allegation of such, generally, "does not meet the 'extreme and outrageous conduct' standard necessary to state a claim for intentional infliction of emotional distress." *Hargraves v. City of Phila.*, No. 05-4759, 2007 WL 1276937, at *3 (E.D. Pa. Apr. 26, 2007)(collecting cases). The Pennsylvania District Courts, though, are split as to what must be additionally shown to make out an intentional-infliction-of-emotional-distress claim under Pennsylvania law, on the basis of racial discrimination. In the Eastern District, for example, the court has interpreted Pennsylvania law to require plaintiffs to show that the alleged discrimination also involved assaults or threats of assault. *See, e.g., Lane v. Cole*, 88 F.Supp.2d 402,

406 (E.D. Pa. 2000) (noting that while "[i]nvidious discrimination is not alone sufficient to support an intentional infliction of emotional distress claim," "[t]he ejection of a tenant from her home with threats of violence in retaliation for her refusal to accede to racial discrimination is another matter."). In the Middle District, however, the Court has found that racial discrimination can be shown, absent assaults or threats of assault, where such conduct "could easily cause a reasonable member of our society to exclaim, '[o]utrageous!'" *See, e.g., Shumate v. Twin Tier Hospitality, LLC*, 655 F. Supp. 2d 521, 542-45 (M.D. Pa. 2009).

Here, regardless of which interpretation of Pennsylvania law is applied, Nayak has set forth in sufficient detail that he was threatened with assault by one of his co-workers on account of his race, and that the conduct he encountered would cause a reasonable person to exclaim "Outrageous!" *See Doc.* 1 at 3. Moreover, upon reporting the alleged racial discrimination to Voith's human resources, Nayak claims that no action was taken by Voith to prevent the alleged discrimination from occurring again. *Id.* Consequently, Nayak alleges that he was later physically assaulted by one of his supervisors and retaliated against by co-workers. *Id.* at 3-4. As well, following the physical assault, Nayak claims that he was placed on medical leave because of poor health that resulted from the harassment and assault that had occurred. Consequently, Nayak brings a claim for intentional infliction of emotional distress, not for his early termination pursuant to

the terms of the release (*see Doc.* 23 at 28), but for Voith's alleged facilitation of racial discrimination in the work place, which ultimately caused Nayak to endure injuries including anxiety and insomnia. *See Doc.* 1 at 9, 13.  Upon these factual allegations, we find that Nayak has stated a claim for relief against Voith, and said claim should be allowed to proceed to the discovery phase. *See Price v. Philadelphia Elec. Co.*, 790 F.Supp. 97, 100 (E.D. Pa. 1992)(declining to dismiss plaintiff's claim for intentional infliction of emotional distress against an employer for racial discrimination committed by plaintiff's fellow employee).

### 3.  Nayak's Cross-Motion to Amend.

Along with his cross-motion to amend, Nayak has properly included a proposed amended complaint. *Doc.* 28-1.  The contents of the proposed amended complaint are substantially similar to the contents of the original complaint. Nayak, however, seeks to add the following federal claims: (1) bribery pursuant to 18 U.S.C. § 201; (2) "violation of H1B visa terms and defrauding [the United States Citizenship and Immigration Services ("USCIS")] under 18 U.S.C. § 371; (3) "exploitation" pursuant to H.R. 2169, 112th Cong. (2011) and in violation of Section 101(a)(15)(U) of the Immigration and Nationality Act (8 U.S.C. § 1101 (a)(15)(U)); and (4) ethnic intimidation under 18 Pa. C.S. § 2710.

Initially, we note that Nayak's proposed amended complaint fails to show that the release should be invalidated.  Thus, we would still consider his Title VII

and wrongful termination claims as barred for the reasons discussed, *supra*. Second, Nayak cites two federal criminal statutes as the basis for two of his new claims. Those statutes do not give rise to private causes of action. *See Carpenter v. Young*, No. 05-927, 2004 WL 1858353, at *3-*4 (E.D. Pa. Aug. 3, 2004)(ruling the same in a civil case where the plaintiff brought suit pursuant to the federal criminal code); *Manning v. Haggerty,* No. 3:11-CV-302, 2011 WL 4527818 (M.D. Pa. Sept. 28, 2011); *see also Rapoport v. Republic of Mexico*, 619 F. Supp. 2d 1476, 1480 (D.D.C. 1985)("This claim must also fail, as it is clear that no private right of action can exist under 18 U.S.C. § 371.").[9]  Accordingly, any claim that Nayak is attempting to bring under the federal criminal code would generally be dismissed with prejudice.[10]  Last, Nayak's attempt to set forth a claim for

---

[9]      In a similar vein, to the extent Nayak seeks to to have Voith investigated or prosecuted by the Federal Bureau of Investigations, *see generally, Doc.* 44 at 15-16, "a private person does not have a 'judicially cognizable interest in the prosecution [or investigation] … of another.'" *Kent v. Vickers*, 481 F. App'x 709, 711 (3d Cir. 2012)(per curiam)(quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). Such a claim, therefore, should also be dismissed. As well, Nayak has provided no justifiable reason as to why this Court should stay the case pending the outcome of any alleged FBI investigation, and the Court is aware of none. This is especially true in a case such as this where almost all of Nayak's claims are insufficiently plead.

[10]      In his reply brief, Nayak admits that he has no private right of action under the federal criminal code. *Doc.* 44 at 11, 12. Nayak, nevertheless, asks that the two claims associated with the federal criminal statutes in his amended complaint be permitted to proceed "under other appropriate statute[s]." *Id.* Specifically, Nayak mentions the civil rights statutes, possibly referring to 42 U.S.C. § 1983. *See id.* It is well-established, however, that only state actors can be held liable

"exploitation" pursuant to H.R. 2169, 112th Cong. (2011), a piece of federal

legislation that has not been duly enacted in accordance with Article I, Section 7,

of the Constitution, is flawed because he has no private right of action pursuant to

a presently non-existing law.[11]   Additionally, nothing in the text of 8 U.S.C.

1101(a)(15)(U) provides Nayak with a private cause of action against an entity

such as Voith.   Rather, § 1101(a)(15)(U) is a statutory provision that permits

USCIS to grant temporary lawful resident status to alien victims of a crime who

assist in the investigation or prosecution of that crime.   *See Torres-Tristian v.*

*Holder*, 656 F.3d 653, 656 (7th Cir. 2011).

In addition to the aforementioned deficiencies that are contained in his

---

under § 1983, *see Barna v. City of Perth Amboy*, 42 F.3d 809, 815–16 (3d Cir. 1994) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)), and Nayak has provided no allegations that Voith qualifies as such.  Moreover, to the extent that Nayak is actually referring to other provisions of the Civil Rights Act of 1964, he has not shown that the release should be invalidated; wherefore, any additional claims under the Civil Rights Act of 1964 would remain barred.  Finally, to the extent that Nayak here wants the Court to guess what state law might apply, the liberal pleading standard that he relies upon for such a proposition does not allow him to leave Voith guessing as to his cause of action.  Moreover, the same liberal pleading standard does not mean that the Court must provide him with his claims, contrary to Nayak's suggestion.

[11]     According to the legislative information from the Library of Congress, on August 25, 2011, H.R. 2169 was referred to the House Subcommittee on Immigration Policy and Enforcement, where it apparently remains:

*See*  http://thomas.loc.gov/cgi-bin/bdquery/z?d112:H.R.2169:  (last  visited  on October 6, 2014).

proposed amended complaint, Nayak has not cured the deficiencies with respect to the state-law claims that we recommend be dismissed from the original pleading. Furthermore, Voith correctly points out that Nayak waived his right to bring a claim for ethnic intimidation as it relates to his treatment at work. Thus, since Nayak has not otherwise shown that the release to which he signed should be invalidated, any claim for ethnic intimidation in the work place would be barred.[12]

Even though we find that Nayak's proposed amended complaint would be futile, except for his remaining claim for intentional infliction of emotional distress, we are not hesitant to recommend that he be provided with a final opportunity to amend his complaint in an attempt to cure the curable deficiencies discussed herein (i.e. show that the release should be invalidated). If Nayak chooses to so amend his complaint, he shall be put on notice that "[an] amended complaint 'supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading.'" *West Run Student Housing Assoc., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 171 (3d Cir. 2013)(quoting *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1504 (1996)). Last, in the event that Nayak does not elect to so amend his complaint, consistent with this Report and

---

[12]    Interestingly, Voith does not raise this argument when seeking dismissal of Nayak's intentional-infliction-of-emotional-distress claim. As such, to the extent it even applies, we will not address it herein.

26

Recommendation, his claim for intentional infliction of emotional distress should be the only claim to proceed.

## IV.   **Recommendation.**

Accordingly, **IT IS RECOMMENDED** that:

(1) Nayak's claims be dismissed, except for his state-law claim for intentional infliction of emotional distress;

(2) Nayak be granted leave to amend consistent with this Report and Recommendation;

(3) Nayak's motion (*Doc.* 7) to quash or invalidate the signed agreement be presently **DENIED** as moot in that he should be provided with an opportunity to amend his complaint and include allegations therein, in an attempt to plausibly show that the signed release should be invalidated.

(4) Voith's motion to dismiss (*Doc.* 14) be **GRANTED IN PART** and **DENIED IN PART**;

(5) Nayak's cross-motion to amend (*Doc.* 28) be **DENIED**; and

(6) Nayak's motion (*Doc.* 36) "to temporarily set aside or disregard" Judge Caldwell's opinion in *Nayak v. CGA Law Firm*, No. 1:13-CV-2533, which is pending appeal in the Third Circuit, be **DENIED** as frivolous in that it lacks any apparent legal basis.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen  (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this **22nd** day of **October, 2014**.


*S/ Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge