# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SANDEEP NAYAK, | : | CIVIL NO. 1:14-CV-02211 |
| | : | *Consolidated with* 1:14-CV-01053 |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | |
| MATTHEW HERBISON, *et al.*, | : | |
| | : | (Magistrate Judge Schwab) |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

In this consolidated lawsuit, the plaintiff, Sandeep Nayak ("Nayak"), has brought claims of race discrimination, retaliation, and hostile-work environment, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S. § 955(a), *et seq*.   Additionally, Nayak raises several claims arising under Pennsylvania state law.  Pending before the Court is the defendants' Rule 12(b)(6) motion to dismiss. Our findings and recommendations follow.

## I.   Relevant Procedural History.

Nayak, a resident and citizen of India, initiated this lawsuit on November 19, 2014, when he filed a complaint and a motion to proceed *in forma pauperis*. *Docs.* 1 & 2.  In his complaint, Nayak names the following four defendants: (1), Matthew Herbisson ("Herbisson"); (2) Paul Barlow ("Barlow"); (3) Jason Hoffman

("Hoffman"); and (4) Bradley Martin ("Martin").  *Doc.* 1 at 2.  According to Nayak, Herbisson is a resident of Pennsylvania and the other three defendants also have a place of business there.[1]  *Id.*  On November 20, 2014, we granted Nayak's motion to proceed *in forma pauperis* and ordered the United States Marshal's Service to serve the defendants or obtain waivers of service.  *Doc.* 5.  On December 19, 2014, the defendants waived service, *Docs.* 8, 9, 10, & 11, and on January 30, 2015, they filed a motion to consolidate this action with a related action, *Nayak v. Voith Turbo Inc.*, 1:14-CV-02211-YK.  *Doc.* 22.  On May 26, 2015, we granted the defendants' motion to consolidate.  *Doc.* 49.  Before we ruled on the motion to consolidate, however, the defendants had filed a motion to dismiss, and that motion is presently ripe for the Court's disposition.  *Docs.* 26, 32, 44, & 46.

## II.   <u>Legal Standard.</u>

The defendants' motion to dismiss is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under

---

[1]     The address listed in the complaint for the "place of business" of defendants Barlow, Hoffman, and Martin is the address designated for Voith Turbo, Inc., the defendant named in Nayak's related lawsuit.

any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)).  While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). "[L]abels and conclusions" are not enough, and a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoted case omitted).

In resolving a motion to dismiss, we thus "conduct a two-part analysis." *Fowler, supra,* 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. *Id.* at 210–11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoted case omitted).

While traditionally focused upon the allegations contained in a complaint, a court may also consider exhibits attached to a complaint, matters of public record, and "an undisputedly authentic document" relied upon by the plaintiff and attached

as an exhibit to a defendant's motion to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).   Moreover, in a case such as this, a complaint filed by a *pro se* litigant is to be liberally construed and held to a less stringent standard than formal complaints drafted by a lawyer. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).   Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim."   *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

### III.   Nayak's Complaint.[2]

Nayak relocated from India to the United States on October 12, 2012, for an employment opportunity he accepted with Voith Turbo, Inc. ("Voith").   On November 5, 2012, while working for Voith, a non-defendant co-worker cut out an article about the population growth in India.   In response to said article, Herbisson asked Nayak what was the reason for the population growth in India and whether he (Nayak) used, or knew how to use, a contraceptive.   Two days later, Nayak went out to lunch with Hoffman, and, at some point during lunch, Hoffman bought a gun at a gun store.   After Hoffman bought the gun, Nayak asked him why he needed one.   In response, Hoffman told Nayak that he needed the gun "to keep you

---

[2]   In accordance with the legal standard, *supra,* we will accept Nayak's properly pleaded allegations in the complaint as true and provide them accordingly.

(Nayak) away." *Id.* at 3.  As Hoffman provided that response, he also pointed the gun in Nayak's direction.

Subsequently, on December 11, 2012, Nayak was talking with Herbison about his tobacco habit.  During the discussion, Herbison said to Nayak that he (Nayak) "must know what tobacco is, it is an Indian patent." *Id.* The following day, during a discussion about a documentary on Indians in the United States, Herbison told Nayak that "[m]ost of the Indians in the United States are now going back to India, you should also go back. . . ." *Id.*  Thereafter, on December 18, Herbisson told Nayak that his friends were United States Marines and that they would like to "try their hands on [him]." *Id.*

At the end of December, after Nayak had obtained a driver's license, Herbisson commented: "Are we going to have a brown colored driver on the streets of York?" *Id.* at 3.  On another occasion at the end of December, Herbisson grabbed Nayak by the back of his shirt collar and repeated the comment about his friends in the United States Marines. *Id.* at 3-4.  Furthermore, Herbisson had followed Nayak in his car on more than one occasion. *Id.* at 4.

After December passed, Nayak complains that the alleged abuse and harassment did not cease.  For instance, on January 8, 2013, Nayak claims that, while riding in a car with Barlow and Hoffman to a work-related meeting, his co-workers smelled an "offensive odor." *See id.* at 3.  Upon smelling the odor,

Hoffman opened one of the car doors, while the car was in motion, and asked Nayak whether the odor smelled like India.  Two days later, Herbisson and Nayak got into an argument about vending machines.  At one point during the argument, Herbisson asked Nayak whether there are vending machines in India.  Said argument also resulted in Herbisson shoving Nayak.

On January 13, 2014, Nayak reported "the abuse and harassment" to Martin, who was Voith's Human Resource Manager.  On January 15, 2015, Nayak also texted Barlow about his concerns; however, Barlow told Nayak he needed to talk with Martin.

On an undisclosed date, after reporting the aforementioned events, Martin told Nayak that he does not know how to behave in an American society and that is why the other employees harass him.  Martin also suggested that Nayak take classes about American culture.  Furthermore, Barlow once told Nayak that by reporting incidents of abuse and harassment, he (Nayak) had "made the biggest mistake of [his] life."  *Id.* at 4.  Eventually, Nayak was placed on a 90-day probation period.  Moreover, at some point, Martin emailed the Indian Association of York, asking if it could provide Nayak with culture sensitivity training.

Barlow had also informed Nayak that he was "on the slow boat back to India" and that he (Barlow) would otherwise put Nayak "on a plane back to India."  *Id.* at 5.  Further, on January 26, 2013, Barlow told Nayak that he would not

intervene to stop the alleged harassment and that Martin was on Herbisson's side. That same day, as Nayak was departing for Voith's office in Germany, Barlow sent a text message to Nayak threatening him with repercussions if he reported incidents of harassment to his (Barlow's) counterpart overseas.

Nearly half a month later, in February 2013, during a discussion about work-related matters, Herbisson told Nayak that he is an Indian and "should learn how to treat us superior because we are Americans." *Id.* at 5. On the same day, Hoffman and Nayak got into an argument culminating in Hoffman pushing a chair in Nayak's direction. As a result of Hoffman's action, Nayak's right palm was hit by the chair.

Two weeks after Nayak's argument with Hoffman, Barlow reprimanded Nayak for attempting to purchase a new car while on the job; however, Herbisson was never reprimanded for having recently remained on the phone with his wife for nearly 45 minutes during work hours and other employees were never reprimanded for listening to the radio. Specifically, Barlow told Nayak that he was not doing his job and that there were "other sales people to take [the] job." *Id.* at 6. Upon being reprimanded, Nayak responded that he felt as though he was being retaliated and discriminated against. Barlow and Nayak subsequently stepped into a nearby conference room. In the conference room, Barlow banged his hand on the table and yelled, "[t]his is no fucking retaliation," to which Nayak "felt

traumatized." *Id.* at 6.  As well, during this same incident, Nayak attempted to leave the conference room to again report allegations of abuse and discrimination to Martin, but Barlow grabbed Nayak by the shirt, which ripped one of the shirt's cuffs.  Barlow also maneuvered the door in the room to hit Nayak's elbow.  Barlow then proceeded to follow Nayak out of the conference room towards Martin's office, shoved him, and hit him on the right side of his neck.  Afterwards, Nayak reported the incident to Martin.  Martin, though, never took any corrective action and "covered up" Nayak's complaints.  Also, in the early morning hours, following the conference-room incident, Barlow sent three emails to Nayak.  Those emails were sent at 3:33 a.m., 4:17 a.m., and 7:47 a.m., respectively, and they demanded an explanation from Nayak, on work-related issues.

On the same date that Barlow sent those three emails, Nayak had an attorney contact Voith about his accusations of harassment and abuse.  *See also, Doc.* 1-2 at 2-6.  In subsequent correspondence, Voith substantiated and acknowledged some of the harassment Nayak experienced from Herbisson.  *See also, id.* at 13. Furthermore, on April 12, 2013, Voith acknowledged that Barlow had physically assaulted Nayak.

Based on these allegations, Nayak raises the following claims: (1) Count I - racial discrimination, in violation of Title VII and the PHRA, against Herbisson, Hoffman, and Martin; (2) Count II - retaliation, in violation of Title VII and the

PHRA, against all defendants; (3) Count III - hostile-work environment, in violation of Title VII and the PHRA, against Herbisson, Hoffman, and Barlow; (4) Count IV - common law assault against Herbisson, Hoffman, and Barlow; (5) Count V - common law battery against Barlow; (6) Count VI - intentional infliction of emotional distress ("IIED") against Herbisson, Hoffman, and Barlow; and (7) Count VII - ethnic intimidation, in violation of state law, against Herbisson, Hoffman, and Barlow.  For remedies, Nayak requests compensatory and punitive damages in excess of $75,000.

## IV.    **Discussion**.[3]

### A. Title VII Claims.

In Counts I, II, and III, Nayak raises Title VII claims against the individual

defendants in their capacities as employees of Voith.  Individual employees, who

are not themselves the employing entity, however, cannot be held liable under Title

VII.  *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1077 (3d Cir.

1996)(en banc); *Dici v. Commonwealth of Pennsylvania*, 91 F.3d 542, 552 (3d Cir.

1996); *see also, Saleski-Shingara v. VNA Health Systems,* No. 14-85, 2014 WL

---

[3]    Pursuant to the Rule 12(b)(6) legal standard, *supra,* we cannot consider the release agreement that we know was signed by Nayak *via* his allegations in the lawsuit he filed against Voith.  Indeed, contrary to the Voith lawsuit, Nayak makes no reference to the release agreement in his complaint here, nor does he rely upon it in setting forth his claims for relief against these defendants.  Similarly, although the release agreement that was filed as an exhibit in the Voith lawsuit has not been sealed, we are hesitant to say that the exhibit qualifies as a "public record" for purposes of being able to consider it on a motion to dismiss filed under Rule 12(b)(6).  Moreover, while this lawsuit has been consolidated with the lawsuit against Voith, the causes of action are to retain their separate identities, *see Cella v. Togum Constructeur Ensembleier en Industrie Alimentaire*, 173 F.3d 909, 912 (3d Cir. 1999), which effectively prevents us from reaching into the Voith lawsuit to review the contents of the release agreement.

At the same time, although we will not consider the release agreement at this stage of the proceedings, in this consolidated lawsuit, Nayak should be required to discuss the release agreement in any amended complaint that he may be permitted to file, assuming he files a proper motion to do so.  As well, Nayak should be required to attach the release agreement as an exhibit to the same.  While such a recommendation may seem drastic, we realize that the release agreement may strike at the heart of this lawsuit as much as it does in the one against Voith, and the defendants should not be required to litigate this case through summary judgment if there is a complete bar to the claims in the first instance.

5702928, at * (M.D. Pa. Nov. 5, 2014)("It is fairly well-settled that [the] definition of 'employer' under Title VII excludes individuals.")(citation omitted); *Caso v. Luzerne County*, No. 13-2253, 2015 WL 1951610, at * (M.D. Pa. Apr. 28, 2015)("Third Circuit jurisprudence is clear that Title VII does not subject individual supervisory employees to liability . . . .")(internal quotations and sources omitted).   Accordingly, absent a showing that any of the named defendants were themselves the employing entity, the Title VII claims against them, in this consolidated action, should be dismissed with prejudice.

### B. PHRA Claims.[4]

In Counts I, II, and III, Nayak also raises claims against the defendants under the PHRA.   According to the defendants, however, the PHRA claims should be dismissed because Nayak does not allege that he exhausted his administrative remedies.   *Doc.* 32 at 20-22.   In response, Nayak, who concedes that he did not file a "separate" PHRA complaint before filing this lawsuit, pleads ignorance of the PHRA's exhaustion requirements and asks the Court to "waive off" the same. *Doc.* 44 at 10-11.

---

[4]   The parties agree that Pennsylvania state law governs the remaining claims. Furthermore, based on the allegations in Nayak's complaint, we find that we have subject-matter jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1332(a)(2).

The PHRA bars employers from discriminating against employees based on "race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability...." 43 P.S. 955(a).   Under the PHRA, a plaintiff must exhaust all administrative remedies before seeking judicial relief. 43 P.S. § 953(h); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997).  To do so, he must file a complaint with the Pennsylvania Human Rights Commission ("PHRC") within 180 days of the allegedly discriminatory act. 43 P.S. § 953(h).  The PHRC then has exclusive jurisdiction over the claim for one year after its filing, unless the PHRC resolves the claim before the year has elapsed. 43 P.S. § 962(c)(1). If, after one year, the claim has not been resolved, the party has the option to forego the state administrative process and file suit in court. *Id.* Upon the PHRC's resolution of a claim, the plaintiff has two years to bring an action in court. 43 P.S. §§ 962(c)(1)(2).

"While the requirements of exhaustion 'are to be interpreted in a nontechnical fashion, the aggrieved party is not permitted to bypass the administrative process.'" *Spangler v. Moderne Glass Co.*, No. 06–1394, 2008 WL 919693, at *6 (W.D. Pa. Apr. 3, 2008) (quoting *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976)).  Further, this Court has dismissed PHRA claims in cases where a plaintiff fails to allege exhaustion of administrative remedies in a complaint. *See, e.g., Smith v. Central Dauphin School District*, 419

F.Supp.2d 639, 650-51 (M.D. Pa. 2005)(dismissing plaintiff's PHRA claim for her failure to allege that she filed an administrative complaint with the PHRC or in any way exhausted her administrative remedies).

Here, as the defendants point out, Nayak fails to allege that he exhausted his administrative remedies under the PHRA.  Furthermore, Nayak's plea of ignorance will not operate to overcome the administrative process since it is one that cannot be bypassed.  Additionally, since Nayak, in his brief, appears to concede that he never filed a "separate" charge with the PHRC, his PHRA claims should be dismissed with prejudice unless he can show that he made a timely request – i.e., within the 180-day period, *supra* – to have any charge filed with the Equal Employment Opportunity Commission ("EEOC") dual-filed with the PHRC.  *See Salvato v. Smith,* No. 13-2112, 2013 WL 3431214, at *5-*6 (E.D. Pa. July 9, 2013)(denying defendants' motion to dismiss on the non-exhaustion defense where plaintiff, in a charge filed with the EEOC, had expressly requested that the same charge be dual-filed with the PHRC).[5]

---

[5]    We recognize that, in their brief, *see Doc.* 32 at 22, the defendants suggest that Nayak's only request for dual filing was untimely.  Since the defendants' motion is filed under Rule 12(b)(6), however, we will not foreclose Nayak from having the opportunity to plausibly allege otherwise in an amended complaint, should he properly request to do so.

### C. Assault and Battery.

In Count IV, Nayak asserts a claim against Herbisson, Hoffman, and Barlow for the intentional tort of assault. In Count V, Nayak asserts a claim against Barlow for the intentional tort of battery, premised upon the same acts which also make up his assault claim.

Under Pennsylvania law, the intentional tort of battery has been described as an unconsented touching that is either harmful or offensive. *C.C.H. v. Philadelphia Phillies, Inc.*, 940 A.2d 336, 340 n. 4 (Pa. 2008) (defining a battery as "a harmful or offensive contact with the person of another"); *Valles v. Albert Einstein Med. Ctr.*, 805 A.2d 1232, 1237 (Pa. 2002). "'A bodily contact is offensive if it offends a reasonable sense of personal dignity.'" *Herr v. Booten*, 580 A.2d 1115, 1117 (Pa. Super. Ct. 1990)(quoting Restatement (Second) of Torts § 19)(emphasis omitted). Moreover, the Superior Court of Pennsylvania has stated: "Implicit in the tort of battery is the recognition that an individual has a right to be free from unwanted and offensive or harmful intrusions upon his own body." *Id.* Unlike a claim for assault, *infra*, a battery claim does not turn on an apprehension or fear. *See Belcher v. United States*, 511 F.Supp. 476, 483 (E.D. Pa. 1981); *Dalrymple v. Brown*, 701 A.2d 164 (Pa. 1997).

The tort of assault, also at issue in this case, occurs whenever an actor intentionally causes an imminent apprehension of a harmful or offensive bodily contact. *Sides v. Cleland*, 648 A.2d 793 (Pa. Super. Ct. 1994) (citing Restatement (Second) of Torts §21). The plaintiff's apprehension must be reasonable, and the actor must take some affirmative action in an attempt to carry out the threatened harm. *Cucinotti v. Ortmann*, 159 A.2d 216, 217 (Pa. 1960). Words in themselves no matter how threatening, do not constitute an assault; instead, to convert a threat into an assault, there must be some act *eo instanti* to indicate that a battery or other undesirable result will occur immediately. *Id.* at 217-18.

### 1. Barlow.

Nayak's assault and battery claims against Barlow, as we understand them, stem from his alleged act of grabbing Nayak by the shirt which ripped off a button, shutting a door on Nayak's arm, pushing Nayak, and punching Nayak in the neck. *See Doc.* 44 at 5-6, 7.[6]  In each instance, which appears to have occurred solely to prevent Nayak from reporting to Martin, we liberally construe the allegations in the complaint to provide that Nayak did not consent to the contact and that Barlow's actions were intentionally made without justification or excuse. Thus, accepting

---

[6]    To the extent Nayak's claims are also premised upon Barlow's alleged act of banging on a desk while stating "this is no fucking retaliation," there is no claim for battery or assault. Indeed, we question the plausibility of the reasonableness of any apprehension that Nayak might have had in that particular moment.

the same allegations as true, we find that the acts complained of sufficiently make out a battery claim against Barlow for purposes of withstanding a Rule 12(b)(6) motion.

In the assault context, though, we do not view the complaint as plausibly showing that, prior to the occurrence of the contact in each instance, Nayak was reasonably apprehensive of an immediate battery. Indeed, Nayak does not allege that he was aware of, or perceived, Barlow as intending to cause any harmful or offensive contact to him. Thus, we find that the assault claim should be dismissed without prejudice against Barlow.[7]

---

[7] Defendants rely upon and cite to a case from the United States District Court for the Eastern District of Pennsylvania that states if there is no assault, then there can be no claim for battery. *See Doc.* 46 at 12 (citing *Glass v. City of Philadelphia*, 455 F.Supp.2d 302, 366 (E.D. Pa. 2006)). Such a proposition is not always true, however. Take, for example, the classic hypothetical, where an individual shoots an arrow across a field intending to hit a person on the other side. If the arrow makes contact with the other person, said individual could unquestionably be liable for battery absent proof of a valid defense. But, if the other person lacked knowledge of the individual's intent prior to the harmful contact so as to be prevented from having an apprehension of an immediate battery, the individual could just as well escape liability for assault. In that same vein, here, we liberally construe the complaint as alleging that Barlow intended to make offensive or harmful contact with Nayak, but Nayak otherwise did not allege that he was aware of Barlow's intent before the contact allegedly occurred, such that he could have formed an apprehension of an imminent battery. *See also, Belcher, supra*, 511 F.Supp. at 483 (E.D. Pa. 1981); *Dalrymple, supra,* 701 A.2d 164.

### 2.  Hoffman.

Regarding Hoffman, we find that Nayak has likewise failed to state a claim for assault.  *See Doc.* 44 at 6.  To that end, while Nayak alleges that Hoffman pointed a gun at him and stated that it was to keep him (Nayak) away, Nayak fails to allege that the particular incident actually caused him to be reasonably apprehensive of an imminent battery, nor do we infer as much from the allegations in the complaint.  To that end, Nayak also mentions that the two men had been out to lunch together when the alleged incident occurred.  Thus, absent a specific allegation that Nayak had an apprehension of an imminent battery, we do not construe the allegations in the complaint as stating a valid claim for relief for the intentional tort of assault in this scenario.  As well, common sense tells us that Hoffman's alleged act of opening a car door while it was in motion and simultaneous comment on the smell emanating from the car, without more, could not have plausibly triggered, or have been plausibly intended to trigger, a reasonable apprehension of an immediate battery.  Nayak's assault claims against Hoffman, therefore, should also be dismissed without prejudice.

### 3. Herbisson.

Finally, with respect to Herbisson, *see Doc.* 44 at 6-7, Nayak solely alleges that he (Herbisson) had threatened to have his friends in the United States Marines "try their hands" on him (Nayak). Nayak, though, does not allege that the friends were nearby or in a position to make good on the threats, or that Herbisson had actually taken any affirmative steps to have the perceived threat acted upon. In short, there are no allegations plausibly suggesting an act *eo instanti* to convert the alleged threat into a claim for assault. Thus, since threatening words alone are deemed insufficient to put a person in reasonable apprehension of a harmful or offensive touching, this assault claim should also be dismissed without prejudice.

### D. Intentional Infliction of Emotional Distress ("IIED") and Ethnic Intimidation.

In Count VI, Nayak raises a claim against Herbison, Hoffman, and Barlow for IIED. The defendants argue, however, that Nayak has not alleged facts to plausibly establish that they engaged in any conduct to support an IIED claim and that the claim, therefore, should be dismissed. *Doc.* 32 at 25-26. In his brief-in-opposition, Nayak fails to discuss or offer any argument to support this claim. *See also, Doc.* 46 at 8, n. 2.

Similarly, in Count VII, Nayak raises a claim against Herbisson, Hoffman, and Barlow for ethnic intimidation.  According to the defendants, however, Nayak's claim should be dismissed because he does not allege the necessary elements to succeed on this claim for relief.  *See Doc.* 32 at 26-27.  Again, though, in his brief-in-opposition, Nayak fails to discuss or offer any argument to support this claim.  *See also, Doc.* 46 at 8, n. 2.

Under these circumstances, where Nayak has not offered any argument in support of these claims, we find that Nayak has abandoned them, and we recommend that they be dismissed.  *See Hoffman v. Dougher*, No. 05-906, 2006 WL 2709703, at *4 (M.D. Pa. Sept. 20, 2006)(granting defendant's motion to dismiss on plaintiff's substantive due process claim that was treated as abandoned where plaintiff failed to offer any argument in support of the claim)(citing *D'Angio v. Borough of Nescopeck*, 34 F.Supp.2d 256, 265 (M.D. Pa. 1999)); *see also, Sikkelee v. Precision Airmotive Corp.*, No. 07-886, 2011 WL 1344645, at * 4 (M.D. Pa. Apr. 7, 2011)(deeming unopposed defendants' arguments with respect to a certain number of claims raised by the plaintiff to which the plaintiff did not defend in a brief-in-opposition)(citing, *inter alia*, M.D. Pa. L.R. 7.6); *accord id.* at *4, n. 8.[8]

---

[8]     It is also unclear from the face of the complaint which of Nayak's factual allegations are to make up these claims for relief.

## V.     Recommendation.

Accordingly, **IT IS RECOMMENDED** that:

(1) the defendants' motion to dismiss (*Doc.* 26) is **GRANTED** in part and **DENIED** in part as follows:

   A. Defendants' motion is **DENIED** to the extent that Nayak has stated a state-law claim for battery against Barlow.

   B. Defendants' motion is **GRANTED** in all other respects, as discussed herein.

(2) Nayak's "motion to validate binding agreement between Voith and [himself] for an employment period starting October 2012 until September 2015" (*Doc.* 37) be **DENIED**.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this **4th** day of **June, 2015**.


*S/ Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge